In the Matter of Delores BONIEK, Petitioner, Respondent,

v.

Leo E. BONIEK, Appellant.

No. C9–89–171.

Court of Appeals of Minnesota.

July 25, 1989.

Delores Boniek, Willmar, pro se.

Bradley G. Junkermeier, Willmar, for appellant.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Considered and decided by CRIPPEN, P.J., and NORTON and MULALLY, JJ.,* without oral argument.

## OPINION

NORTON, Judge.

Leo Boniek appeals from a domestic abuse protection order, claiming that evidence presented at the domestic abuse hearing was insufficient to warrant issuance of the protective order under Minn. Stat. § 518B.01 (1988). Respondent Delores Boniek failed to file her brief in a timely manner, and the case proceeded under Minn.R.Civ.App.P. 142.03. We affirm.

## FACTS

Respondent Delores Boniek and appellant Leo Boniek were married 25 years before their divorce on October 28, 1985. During their marriage, Leo physically and mentally abused Delores, and in 1984 she was placed in a shelter for protection. When she left the shelter, Delores had an order for protection which expired upon the parties' divorce.

After their divorce, the parties voluntarily began seeing each other on a casual basis. The parties would visit each other at their respective homes or occasionally dine out together. This informal dating relationship ended on September 20, 1988 for reasons undisclosed by the record. Delores testified that after September 20, several incidents occurred which caused her to fear for her safety. One incident involved Leo dropping off the parties' marriage certificate on Delores' doorstep. Leo delivered the certificate with a note stating that their relationship was over and that they should not see each other any more. Apparently as a symbolic gesture, Leo had cut the certificate in half with a scissors.

Another incident cited by Delores occurred in the fall of 1988 when Leo went to Delores' house unannounced. An insurance salesperson happened to be visiting Delores at that time. When Leo saw the

salesperson, he became angry and violently threw the salesperson to the floor. Even though Leo did not strike or threaten to strike Delores at this time, Delores testified that the incident really scared her.

Delores also testified that Leo drove around her house on occasion, and that it made her scared and nervous. Leo admitted that the acts cited by Delores in her testimony were factually accurate. However, Leo maintained that he never intended his actions to cause Delores to fear for her safety.

## ISSUE

Does the evidence warrant issuance of an order for protection pursuant to Minn.Stat. § 518B.01 (1988)?

## ANALYSIS

An order for protection is justified under the Domestic Abuse Act when a former spouse manifests a present intention to inflict fear of imminent physical harm, bodily injury or assault. Minn.Stat. § 518B.01, subd. 2 (1988); *Kass v. Kass,* 355 N.W.2d 335, 337 (Minn.Ct.App.1984). Past abusive behavior, although not dispositive, is a factor in determining cause for protection. *See Hall v. Hall,* 408 N.W.2d 626, 629 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Aug. 19, 1987). Leo argues that there was no evidence showing any present intent on his behalf to inflict fear of imminent physical abuse. We disagree.

Despite Leo's contentions, his behavior in this case went well beyond that exhibited in *Kass.* There, the only current evidence supporting issuance of a protective order was that petitioner thought she noticed her ex-husband following her while she was traveling in a car. *Kass,* 355 N.W.2d at 336. That evidence was insufficient to sustain the issuance of an order for protection. *Id.* at 337.

In comparison, Leo exhibited behavior such as to allow an inference that he intended to instill fear of physical abuse in Delores. Leo delivered the parties' marriage certificate to Delores' doorstep in a mutilated condition along with a note which read in effect, "if this is what you want, this is what you will get." Leo's physical aggression toward the insurance salesperson in Delores' presence could also be seen as an attempt by Leo to inflict fear in Delores. Even though Leo did not harm or threaten Delores at that time, Leo could have intended to intimidate Delores by his actions. In fact, Delores testified that the incident frightened her considerably.

Viewing the evidence in its totality, and in light of Leo's history of abusive behavior, sufficient evidence exists to infer a present intent to inflict fear of imminent physical harm, bodily injury or assault within the meaning of the Domestic Abuse Act.

## DECISION

The trial court properly issued the protection order.

Affirmed.