*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2053**

In re the Matter of: Cherelle Lee Schroeder, petitioner,
Respondent,

vs.

Bladen Frederick Schroeder,
Appellant.

**Filed July 21, 2014
Affirmed in part and reversed in part
Connolly, Judge**

St. Louis County District Court
File No. 69DU-FA-13-1003

Cherelle Schroeder, Hermantown, Minnesota (pro se respondent)

Bill L. Thompson, Law Office of Bill L. Thompson, Duluth, Minnesota (for appellant)

        Considered and decided by Smith, Presiding Judge; Connolly, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the order for protection (OFP) granted to his estranged wife against him and the order requiring that his parenting time with the parties' son be supervised. Because we see no abuse of discretion in the grant of the OFP, we affirm it; because there are no findings to support the requirement of supervised parenting time, we reverse that order.

## FACTS

Appellant Bladen Schroeder and respondent Cherelle Schroeder were married in 2010; their son, B.C., was born in 2011 and is now three years old.[1] The family lived together, with respondent's child from a former relationship, until 2013, when appellant left. Thereafter, respondent let appellant see their son only when she was present.

On August 28, 2013, the parties had an altercation as a result of respondent's refusal to let appellant take B.C. to visit appellant's family. The next day, respondent filed a petition for an OFP for herself and on behalf of the children, and an emergency OFP was granted.

On September 3, 2013, at the hearing on respondent's petition, she had an advocate with her, and appellant was represented by counsel. Respondent testified that, on August 28, appellant "kind of made open-ended threats as in if I don't allow him to take [B.C.] or see [B.C.], it's not going to go well for me, I'll regret it . . . although he isn't specific as to how I'll regret it or when, it does make me fearful that he's going to

---

[1] Respondent takes no part in this appeal.

act out violently."  Appellant testified that, when respondent told him he could not take B.C.,

> I said, you know, if you keep this up, things . . . are not going to go pleasant . . . it's not going to work in your favor.  You can't really hold the kid [B.C.] from me . . . [or] the cops will be involved.  And that was my open-ended threat, saying that the cops would be involved in the matter . . . because we can't agree upon things civilly.

Respondent also testified that, when appellant was at her house after moving out, he "did prevent me at one point from shutting my front door.  When I . . . finally [got] my front door shut and locked, he ended up punching it to the point where when I opened it again . . . I was unable to put the dead bolt in the hole."  Appellant testified that his dog was still in respondent's house and that, when he "had pounded on the door and I had asked for [the] dog back," respondent didn't answer but "as [he] was leaving, she came out and tossed [his] dog through the window of the car."

When asked why she sought an OFP on behalf of B.C. and her own child, respondent answered that it was because they cowered when "anybody" yelled at or pointed at them and described an incident in which she saw a hand print on B.C.'s back after he had been in a room with appellant.  Appellant testified that he had never left a mark on B.C.

The district court made no finding that there had been any abuse of B.C. and issued an OFP for respondent but not on behalf of the children; however, the district court

3

also ordered that appellant's parenting time be supervised.[2]  Appellant argues that both the OFP and the parenting-time decision were abuses of the district court's discretion.

## DECISION

**1. OFP**

"Whether to grant relief under the Domestic Abuse Act (Minn. Stat. [§§ 518B.01-.02 (2012)]) is discretionary with the district court." *McIntosh v. McIntosh*, 740 N.W.2d 1, 9 (Minn. App. 2007).  But, absent sufficient evidence, this court will reverse an OFP issued under Minn. Stat. § 518B.01.  *See Bjergum v. Bjergum*, 392 N.W.2d 604, 606-07 (Minn. App. 1986).

After closing arguments, the district court said it was "concerned about the verbal statements . . . by [appellant] to [respondent] that 'you will regret it,' . . . [and] 'things will not go well'" and "also concerned with the fact that apparently there was a door slamming incident or a door pounding incident . . . which could and the Court finds by preponderance of the evidence did put [respondent] in fear of bodily harm or injury [and] . . . does constitute domestic abuse as defined by the statute [i.e., Minn. Stat. § 518B.01, subd. 2(a)]."  Based on the findings that respondent had been threatened and had feared bodily harm, the district court granted the OFP.  The parties' testimony supports these findings.

Both testified that appellant made an "open-ended" threat, and respondent said she was "fearful that [appellant is] going to act out violently."  Respondent also described "a debate, well, a fight" the parties had in April 2013 in which appellant grabbed her by the

_____

[2] Both orders expired on March 3, 2014.

4

neck and threw her against a wall, but did not cause bruising; she also testified that no police report was filed after this incident. This was sufficient evidence for the grant of the OFP and the district court did not abuse its discretion.

**2.      Supervised parenting time**

The district court has broad discretion in deciding parenting-time questions based on the best interests of the child and will not be reversed absent an abuse of discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). "A district court abuses [its] discretion [regarding parenting time] by making findings unsupported by the evidence or improperly applying the law." *Hagen v. Schirmers*, 783 N.W.2d 212, 215 (Minn. App. 2010). A district court may restrict parenting time if it finds that parenting time "is likely to endanger the child's physical or emotional health or impair the child's emotional development." Minn. Stat. § 518.175, subd. 1 (a) (2012).

At the hearing, appellant's attorney objected to the supervised visitation, noting that "there's been no substantial . . . evidence provided here today that shows my client has abused the children" and "there's nothing in the record that would indicate that my client is in need of supervised visits with the child." Respondent's advocate was asked for her reaction and said supervised parenting time was requested "because of the fear of abuse that had occurred towards the children before . . . ." The district court then observed, "I didn't make a finding that that occurred though."

Because the district court explicitly found that appellant did not abuse B.C. and did not make any finding indicating why B.C.'s physical or emotional health would be endangered or his emotional development impaired by being in appellant's care without

supervision, we conclude that the order for supervised parenting time was an abuse of discretion and reverse it.

**Affirmed in part and reversed in part.**