*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0670**

In the Matter of: Paula Jean Ball, for herself
and o/b/o W. V. B. and K. A. R., petitioner,
Respondent,

vs.

Steven "Captain America" Rogers,
Appellant.

**Filed December 19, 2016
Affirmed
Larkin, Judge**

Wadena County District Court
File No. 80-FA-16-9

Paula Jean Ball, Menahga, Minnesota (pro se respondent)

Douglas R. Hegg, Hegg Law Office, Alexandria, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Peterson, Judge; and Hooten, Judge.

# U N P U B L I S H E D   O P I N I O N

**LARKIN**, Judge

Appellant-husband challenges the district court's grant of an order for protection on behalf of respondent-wife. We affirm.

**FACTS**

Respondent Paula Jean Ball and appellant Steven "Captain America" Rogers are the parents of W.B., born in 2010. Ball has a second child, K.R., who was born in 2006, before Ball met Rogers. The parties married in 2009, separated in 2012, and have had little contact since. W.B. lived with Ball after the couple's separation, and Rogers and W.B. had little to no contact. On January 4, 2016, Rogers picked W.B. up from school without notifying Ball.

On January 5, 2016, Ball petitioned for an order for protection (OFP) against Rogers. Rogers petitioned for an OFP against Ball shortly thereafter. The district court held a hearing on both petitions in February 2016. The district court heard testimony from Ball, Ball's mother, a county child-protection employee, Rogers, and Rogers's mother.

The parties described their marriage differently. Ball's petition alleged that the marriage failed in 2012 when she locked herself in a bathroom during a fight with Rogers, Rogers broke the door, and Rogers said that she "had better not be there when he got home." Ball's petition alleged that Rogers would have abused K.R. if she had not taken the abuse for him and that Rogers threatened to kill himself if she left him. Ball testified that Rogers routinely verbally, mentally, and sexually abused her and that Rogers killed a dog in front of her and the children. Ball's mother testified regarding similar controlling and violent behavior by Rogers. In contrast, Rogers testified that he was hardly home during the marriage, at first because he was attending school out of town and later due to work. He said the marriage failed when he learned that Ball had romantically

communicated with a man on the Internet and Rogers realized they could not keep "fighting like this in front of the children."

The district court granted Ball's request for an OFP against Rogers, granted Ball sole physical custody of W.B., and established a supervised parenting-time schedule for Rogers. The district court's stated grounds for the OFP were Rogers's "threats to kill [Ball]." Rogers moved for reconsideration alleging that his three-year-old threats to harm Ball did "not substantiate a finding of an imminent threat of harm," there was "no threat of any past or present harm" to K.R. or W.B., and the order for supervised visitation was not supported by a finding of domestic abuse against W.B. or by consideration of the best-interests factors. The district court denied Rogers's requests to reconsider the order regarding Ball and W.B. and to expand his parenting-time schedule. In doing so, the district court made additional findings in support of the OFP. However, the district court granted reconsideration of its order "to the extent" that it applied to K.R. This appeal follows.[1]

## DECISION

Rogers argues that the district court erred by granting an OFP on behalf of Ball and W.B. because its findings of domestic abuse with respect to Ball were based on stale allegations without a finding of present harm or threat of harm, and because it did not find domestic abuse with respect to W.B.[2] We first note that the OFP does not, on its face,

---

[1] Ball did not file a brief, and this court ordered the appeal to proceed under Minn. R. Civ. App. P. 142.03.

[2] Rogers also argues that the district court erred by ordering that his parenting time be supervised. As to this issue, Rogers states that, "Wadena County Social Service brought a

3

apply to W.B. The OFP identifies only Ball as the protected party. We therefore do not address Rogers's argument that the district court erred in granting an OFP on behalf of W.B.

We review a district court's decision to grant an OFP for an abuse of discretion. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn. App. 2009). "A district court abuses its discretion if its findings are unsupported by the record or if it misapplies the law." *Braend ex rel. Minor Children v. Braend*, 721 N.W.2d 924, 927 (Minn. App. 2006). "We review the district court's findings of fact for clear error. In doing so, we view the evidence in the light most favorable to the decision." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004) (citation omitted). The resolution of conflicting evidence and witness credibility determinations "are exclusively the province of the factfinder." *Id.* We will reverse when the district court's findings are "clearly erroneous or manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted). We will reverse the district court's findings only if we are left with a definite and firm conviction that a mistake has been made. *Pechovnik*, 765 N.W.2d at 99 (citation omitted).

An OFP is justified when a person "manifests a present intention to inflict fear of imminent physical harm, bodily injury or assault" on his or her spouse. *Boniek v. Boniek*, 443 N.W.2d 196, 198 (Minn. App. 1989). "Present intent to inflict fear of imminent

---

CHIPS action on behalf of the minor child alleging acts of abuse and neglect by [Ball]. As the juvenile court has exclusive jurisdiction under the CHIPS proceeding, [Rogers] concedes this issue as moot." Given Rogers's concession, we do not discuss this issue.

4

physical harm, bodily injury, or assault can be inferred from the totality of the circumstances, including a history of past abusive behavior. An overt physical act is not necessary to support the issuance of an OFP." *Pechovnik*, 765 N.W.2d at 99. This court has found that "aggressive conversation and controlling behavior" constitutes domestic abuse in the context of "an old history of threatening behavior." *Id.* at 99-100 (quotations omitted).

The district court credited Ball's testimony that Rogers has a history of threatening behavior. The district court noted that "[Ball] indicated that prior to their separation[,] [Rogers] had made a direct threat to kill [Ball], had killed a dog in her presence, and had broken doors in a violent manner." The district court also credited Ball's testimony that when she tried to call law enforcement during one of those incidents, Rogers took and smashed the phone. The district court viewed Rogers's recent acts in the context of his past abuse, finding that, "[Rogers,] after three years [of little to no contact with W.B.], removed [W.B] from school without notice to [Ball], demonstrating an intent to cause fear to [Ball] and [W.B.], coupled with the past instances of domestic abuse." The district court found that Ball remained afraid of Rogers throughout the separation, and that removal of W.B. from school was "unreasonable and consistent with prior abuse described by [Ball]."

Rogers does not contest his history of abusive behavior toward Ball. Instead, he argues that the abuse allegations are stale and irrelevant. He views his removal of W.B. from school in isolation and describes it as a valid exercise of his rights as W.B.'s joint legal custodian, a status which Ball does not contest in these proceedings.

5

Rogers may not have violated any custody law or order when he removed W.B. from school without notice to Ball. But when Rogers's removal of W.B. from school is viewed in the context of Rogers's uncontested history of abusive behavior—which is how the district court viewed it—we are not left with the definite and firm conviction that a mistake has been made.

Under the deferential standard used to review the issuance of an OFP, we conclude that the district court did not abuse its discretion by issuing an OFP on behalf of Ball. The evidence was sufficient for the district court to infer Rogers's present intent to inflict fear of imminent physical harm, bodily injury, or assault from the totality of the circumstances, including Rogers's history of abusive behavior.

**Affirmed.**